**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT BOWLING GREEN**

KEENAN ELLIOTT                                                                    PLAINTIFF

v.                                                        CIVIL ACTION NO. 1:13CV-P174-R

MISSE CAUSEY *et al*.                                                        DEFENDANTS

**MEMORANDUM OPINION**

*Pro se* Plaintiff, Keenan Elliott, proceeding *in forma pauperis* filed an action under

42 U.S.C. § 1983 (DN 1).  This matter is before the Court for screening pursuant to 28 U.S.C.

§ 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other*

*grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons set forth below, this action will

be dismissed.

**I.  SUMMARY OF CLAIMS**

Plaintiff is currently incarcerated at the Luther Luckett Correctional Complex [LLCC].

The allegations in his complaint, however, concern his detention while incarcerated in the

Warren County Regional Jail [WCRJ].  Plaintiff names two Defendants in this action.  He lists

them as follows: 1) Misse Causey, Chief Deputy at WCRJ; and 2) Jackie Strode, Jailer at

WCRJ.  Plaintiff states that he sues Defendants in their individual and official capacities.  As

relief, Plaintiff seeks monetary and punitive damages.  Further, Plaintiff states that Defendants

should be "charged" for tampering with physical evidence.

Plaintiff begins his complaint by stating "Due Process Rights, Im Writing to Show Were

Misse Causey Should be charged as well As Jackie Strode Jailer charged for Letting Misse

Causey <u>Tamper With Physical Evidence</u>."  Thereafter, he states that "[t]hese DATES will show

That These Shoes Have Been in The Jail During The Whole Time I've wanted them, then when I

Filed the lawsuit they Disapeared."[1]  Thereafter, Plaintiff sets forth a somewhat difficult to

follow chronology regarding a $200.00 pair of brown "Air Jordans" he wore to jail that he wants

returned to him.

According to Plaintiff, a January 17, 2012, "Pink Reciept Says [he] can wear [his] Shoes

at all Times."  Plaintiff states that on July 5, 2013, a Sgt. Jackson informed him that his "shoes

are still there."  Plaintiff states that on July 8, 2013, the "D.O.C. lady said the Jail can make their

Rules as they go."  According to Plaintiff, on July 11, 2013, Defendant Causey informed him

that his shoes had been thrown away "[s]ince the 6th of 7-11-13, Because Sgt. Jackson went to

Search the 6th Friday nite at 11:30pm He said your shoes are in Property in a green bag."  On

"7-11-13 and Dec 2012 Misse said The Jail is not Gonna pay For my shoes, I told Her Im still

wanting them."  Plaintiff represents that on July 13, 2013, Sgt. Jackson checked on the shoes and

sent a message to Plaintiff that his "Brown Jordans are confermed their in property."  On July 15,

2013, "CO Josh Johnson said shoes in property."

Plaintiff states that on July 16, 2013, he spoke with Defendant Causey and asked that his

girlfriend be allowed to pick up his shoes.  According to Plaintiff, Defendant Causey informed

Plaintiff that his shoes had been disposed of and that he should "[g]et your attorney to Subpoena

them."  She further informed him that the shoes belong to the jail, "its Jail property now."  The

following day, according to Plaintiff, Defendant Causey again informed him that the shoes were

jail property and he could not have anyone pick them up; however, his girlfriend could come

pick up his license.  Plaintiff continues stating that on this same date, July 17, 2013, he again

---

[1]Plaintiff states that he has another action pending in the Western District of Kentucky, Civil
Action No. 1:13CV-106, "[a]bout [his] shoes being destroyed."

spoke to Defendant Causey and made it clear to her that he did not want the shoes in his cell, but

that he was trying to "get them Home." Plaintiff states that Defendant Causey informed him that

the shoes had been "disposed of." Later that same day, Plaintiff represents, he inquired of Lt.

Tim and Lt. Joseph Blair about the status of his shoes. According to Plaintiff, they asked

whether the shoes were involved in an investigation and when Plaintiff stated they were not, they

agreed with Plaintiff that his shoes should be released. Plaintiff states that Lt. Tim commented

that something was "weird about sHes not letting you or your family Have them." According to

Plaintiff, on August 8, 2013, Lt. Doug Miles informed Plaintiff that his Air Jordans were "in

property." Further, states Plaintiff, on October 9, 2013, he had a legal aide notarize a letter to

Defendant Causey in which he raised various issues, one of which was his shoes. According to

Plaintiff, Defendant Causey responded to the letter but would not discuss his shoes. Plaintiff

ends his complaint with a question, "THESE SHOES ARE WHERE?"

## II.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity,

officer, or employee, the trial court must review the complaint and dismiss the complaint, or any

portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a defendant who is immune

from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is

legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490

U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is

based on an indisputably meritless legal theory or where the factual contentions are clearly

baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers*, *USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

#### A. Due Process Claim

The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Fourteenth Amendment's Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v.*

*Williams*, 474 U.S. 327 (1986).  In order to assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation.  *Parratt v. Taylor*, 451 U.S. at 543-44.

Similarly, the Sixth Circuit has stated, "in section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate."  *Victory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983).  The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*.  *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).  The same rationale applies to claims under the Fifth Amendment Takings Clause; that is, no taking has occurred absent a showing that available remedies have been pursued and have failed to provide adequate compensation.  *Hudson v. Palmer*, 468 U.S. at 539 (O'Connor, J., concurring).

As explained by Justice O'Connor,

[A] mere allegation of property deprivation does not by itself state a constitutional claim under either [the Due Process or Takings] Clause.  The Constitution requires the Government, if it deprives people of their property, to provide due process of law and to make just compensation for any takings.  The due process requirement means that Government must provide to the inmate the remedies it promised would be available.  Concomitantly, the just compensation requirement means that the remedies made available must adequately compensate for any takings that have occurred.  Thus, in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate.  When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.

*Id.* (citations omitted).  Plaintiff has failed to demonstrate an inadequacy of state remedies in the case at bar.  Consequently, Plaintiff's claim related to the loss or destruction of his shoes must be dismissed.

## B. Official-Capacity Claims

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Suing Defendants in their official capacities is the equivalent of suing their employer, Warren County. *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county). When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992).

Regarding the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation, "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 691; *accord Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 694; *see Deaton v.*

6

*Montgomery Cnty., Ohio*, 989 F.2d at 889 ("Congress did not intend § 1983 liability to attach where causation is absent."). Simply stated, "a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case Plaintiff has not alleged that a municipal policy or custom caused his alleged harm. Plaintiff's complaint appears to contain allegations of an isolated occurrence affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Warren County, the complaint fails to establish a basis of liability against the municipality, and it fails to state a cognizable § 1983 official-capacity claim.

## C. *Individual-Capacity Claim Against Defendant Strode*

The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 691; *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th

Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)).

Moreover, "[t]he 'denial of administrative grievances or the failure to act' by prison officials

does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th

Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Rather, "a plaintiff

must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Shehee v.*

*Luttrell*, 199 F.3d at 300 (stating that supervisory liability "must be based on active

unconstitutional behavior and cannot be based upon 'a mere failure to act'") (quoting *Salehpour*

*v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). To state a claim for relief, Plaintiff must

show how each Defendant is accountable because that Defendant was personally involved in the

acts about which Plaintiff complains. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).

Here, Plaintiff's § 1983 claim against Defendant Strode in his individual capacity appears

to be based upon the actions of Defendant Causey. Nothing in the complaint sets forth any

action taken on the part of Defendant Strode or shows how this Defendant was personally

involved in the alleged wrongful conduct. Thus, as to the § 1983 claim, Plaintiff has failed to

state a claim upon which relief may be granted against Defendant Strode in his individual

capacity.

### D.  Request for Criminal Action

"It is well settled that the question of whether and when prosecution is to be instituted is

within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C.

Cir. 1965). The Court does not have the power to direct that criminal charges be filed against

anyone as Plaintiff requests. *Peek v. Mitchell*, 419 F.2d 575, 577–78 (6th Cir. 1970); *Fleetwood*

*v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972). To the extent Plaintiff seeks criminal

charges be brought against Defendants, he fails to state a claim upon which relief may be granted.

## IV. CONCLUSION

Plaintiff having failed to state a claim upon which relief may be granted, the Court will enter a separate Order dismissing this case pursuant to 28 U.S.C. § 1915A(b)(1).

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Warren County Attorney
4413.003